## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| INSPIRED INTERIORS, INC., an Illinois, Corporation, and EMILY MACKIE, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-cv-3622 |
| v. | ) ) | JURY DEMANDED |
| MASON AWTRY, an individual, MARNIE BEILIN, an individual, and COLDWELL BANKER RESIDENTIAL REAL ESTATE, LLC, a California limited liability company, and COLDWELL BANKER, LLC, a California limited liability company, and ROLAM EQUITIES, LLC, an Illinois limited liability company. Defendants. | ) ) ) ) ) ) ) ) ) ) ) | |

## COMPLAINT

Plaintiffs, Inspired Interiors, Inc. ("Inspired Interiors") and Emily Mackie ("Mackie") (sometimes collectively referred to herein as "Plaintiffs"), by and through their attorneys, Stahl Cowen Crowley Addis LLC, complain of Defendants Mason Awtry ("Awtry"), Marnie Beilin ("Beilin"), Coldwell Banker Residential Real Estate, LLC and Coldwell Banker, LLC and Rolam Equities, LLC ("Rolam"), as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Inspired is an Illinois corporation doing business in Cook County, Illinois.

2. Plaintiff Mackie is an individual residing in Cook County, Illinois.

3. Defendant Awtry is an individual residing in Cook County, Illinois.

4.      Defendant Beilin is an individual residing in Cook County, Illinois.  Beilin was formerly in a romantic relationship with Awtry.

5.      Defendant Coldwell Banker Residential Real Estate LLC is a California limited liability company with its principal place of business in Cook County, Illinois ("Coldwell Banker Residential" or "Broker").   Upon information and belief, Beilin is a real estate agent for Coldwell Banker Residential.

6.      Defendant Coldwell Banker, LLC is a California limited liability company which is, upon information and belief, affiliated with Coldwell Banker Residential and which owns and operates the website utilized by Coldwell Banker brokers and agents ("Website Owner").

7.      Defendant Rolam Equities, LLC is an Illinois limited liability company.  Upon information and belief, Awtry is the managing member of Rolam.  Rolam Equities financed certain aspects of the development of the Property at issue in this case.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S. Code §1331 based on the allegations contained in Count I below.

9.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S. Code §1367 because the claims form part of the same case or controversy.

10.      Venue is proper in this District pursuant to 28 U.S. Code §1391(b) because a substantial part of the events at issue took place in this District.

11.      This case concerns real estate located in Cook County, Illinois commonly known as 4225 N. Oakley, Chicago, Illinois (the "Property") as well as photographs taken of the Property and misappropriated by certain of the Defendants.

<u>**COUNT I**</u>
**Copyright Infringement Under 17 U.S.C. §§ 101 et seq.**
**(Inspired v. All Defendants)**

12.     Inspired restates and realleges paragraphs 1 through 11 of this Complaint as though fully restated herein.

13.     Inspired Interiors designed and decorated the interior (and some parts of the exterior) of the Property.

14.     In 2015, Inspired Interiors hired a photographer (Chipper Hatter) to take professional photographs of the interior design of the home located at the Property and to prepare floor plans (collectively, the "Intellectual Property").

15.     At the time the photos were taken, Emily Mackie (the principal of Inspired Interiors) lived on the Property.

16.     Awtry, the owner of the Property at the time the photos were taken, agreed to allow Inspired Interiors to hire a photographer to take photos of Inspired's final product – the design and decoration of the Property.

17.     Awtry agreed to allow Inspired Interiors exclusive use of the Property for the photo shoot.

18.     Chipper Hatter assigned all of its right, title and interest in the Intellectual Property to Inspired Interiors including rights to sue on accrued causes of action for infringement.

19.     Inspired Interiors is the holder and owner of all intellectual property rights relating to the Intellectual Property.

20.     Inspired Interiors has the exclusive right to copy, distribute and transmit the Intellectual Property.

21.     Inspired Interiors complied with the Copyright Act and has secured the exclusive rights and privileges in and to the Intellectual Property.

22.     Coldwell Banker, Beilin, the Website Owner and Awtry, without authorization from Inspired, copied, distributed, disseminated and/or otherwise exploited the Intellectual Property.

23.     In or about May 2015, upon information and belief, Awtry and/or Beilin (individually and as an agent of the Website Owner and Coldwell Banker Residential) took the Intellectual Property from Inspired Interior's website and utilized such Intellectual Property to market and sell the Property.

24.     In or about May and June 2015, the Intellectual Property appeared on the webpage www.coldwellbankeronline.com and was associated with the MLS#ID:08935315, which was the MLS listing for the sale of the Property.

25.     Upon information and belief, Awtry and Beilin conspired to cause the Intellectual Property to be reproduced, disseminated and posted on the internet without consent.

26.     Upon information and belief, Awtry and Beilin utilized the Intellectual Property to market and sell the Property in July 2015.  Only weeks after the Intellectual Property was posted online by Beilin at the direction of Awtry, the Property was sold.

27.     Beilin stated to Mackie that Awtry told Beilin to use the Intellectual Property. Beilin also stated to Mackie that Beilin originally told Awtry that Beilin should not use the photographs but he instructed her to use the photographs on the MLS listing.

28.     None of the Defendants were authorized or licensed to reproduce or distribute the Intellectual Property in any manner.

29.    On or about June 5, 2015, Inspired Interiors sent a cease and desist letter to Beilin and Coldwell Banker Residential with regard to the unauthorized reproduction and posting of the Intellectual Property.

30.    By posting the Intellectual Property on its website and the MLS, Coldwell Banker Residential, the Website Owner, Beilin and Awtry each actively engaged in, aided, encouraged and materially contributed, and abetted the unauthorized copying, distribution, dissemination and/or exploitation of the Intellectual Property and protected copyrighted materials.

31.    Coldwell Banker Residential, the Website Owner, Beilin and Awtry each knew its acts constituted copyright infringement.

32.    The conduct of Coldwell Banker Residential, the Website Owner, Beilin and Awtry was willful within the meaning of the Copyright Act.

33.    As a result of each of their wrongful conduct, each of the Defendants are liable to Inspired Interiors for copyright infringement pursuant to the Copyright Act.

34.    Inspired Interiors has suffered damages, including but not limited to damage to its business reputation and goodwill.

35.    Inspired Interiors is entitled to statutory damages under the Copyright Act.

36.    Because the infringement was willful, Inspired Interiors is also entitled to punitive damages and attorneys' fees, expert fees and costs in an amount to be determined at trial.

WHEREFORE, Inspired Interiors respectfully requests the following relief:

A.    Temporarily restrain and preliminarily and permanently enjoin Coldwell Banker Residential, the Website Owner, Beilin and Awtry each from (1) directly or indirectly using the Intellectual Property and directly or indirectly using, copying, disseminating and posting any of the Intellectual Property;

B.    Direct Coldwell Banker Residential, the Website Owner, Beilin and Awtry each to account for all profits derived from their wrongful activities;

C.    Order Coldwell Banker Residential, the Website Owner, Beilin and Awtry each to pay Inspired all of its damages, trebled, resulting from each of their respective misconduct, including full compensation for the injury to Inspired Interiors' goodwill and business reputation;

D.    Order Coldwell Banker Residential, the Website Owner, Beilin and Awtry each to pay punitive damages for their intentional acts of infringement;

E.    Award Inspired Interiors its attorneys' fees, expert fees, interest and costs; and

F.    Grant such other relief as this Court deems just.

**COUNT II**
**BREACH OF JOINT VENTURE AGREEMENT**
**(Mackie v. Awtry)**

37.    Awtry is a seasoned, successful businessman and entrepreneur with years of experience negotiating contracts.

38.    Awtry has participated in the successful startup of companies and has been involved in general real estate development projects.

39.    Mackie is the owner of and senior designer for Inspired Interiors, which is in the business of providing upscale residential interior design, large scale remodeling, kitchen and bathroom design, and interior decorating services.

40.    Upon information and belief, Rolam is an entity owned by Awtry. Awtry is the managing member of Rolam.

41.    Mackie, while she has award winning and sought after design and decorating skills, had no prior experience in buying, redeveloping and selling real estate.

42.     In 2011, Mackie and Awtry entered into an oral agreement for the purpose of jointly re-developing and selling the Property (the "Joint Venture").

43.     The terms of the Joint Venture provided, among other things, that:

a.  Awtry would provide the majority of the finances needed to purchase, convert and develop the Property via his control of Rolam Equities.

b.  Mackie would contribute her knowledge, skill and expertise in the field of interior design and remodeling to facilitate the design and decorating of the Property. In addition, Mackie would use her business, Inspired Interiors, to purchase fixtures, building materials, labor crews/artisans and other products at wholesale prices which are available only to interior designers and builders or building professionals.

c.  Awtry managed the finances and some general operations of the Joint Venture, such as sharing responsibility hiring a general contractor and sharing responsibility of overseeing the progress of the construction.

d.  Mackie handled the day-to-day operations of the Joint Venture, such as, coordinating with suppliers and contractors, being onsite during the rehabilitation work, and facilitating communications between Awtry and the tradesmen.

e.  Mackie managed the interior design and decorating of the Property, including, but not limited to, space plans, demo plans, architectural drawings, millwork drawings, electrical plans, designing the interior space, selecting paint colors, shopping for materials, products and furniture, and coordinating the delivery/installation of furniture, appliances and other materials and products.

f.  Mackie and Awtry would share equally (50/50) in the net profits from the sale of the re-developed Property.

44.     Consistent with the parties' Joint Venture agreement, Awtry (upon information and belief, via Rolam Equities) advanced the funds needed to purchase the Property. Title to the Property was vested in Awtry's name alone, even though Rolam Equities provided the funding; however, Mackie was involved in the decision to purchase the Property and actively participated in the process of viewing, selecting appraising and profit forecasting the Property for the re-development project.

45.     Upon information and belief, Awtry purchased the Property for approximately $550,000.00.

46.     In or about August 2011, Mackie engaged the services of Kennedy Architecture for purpose of obtaining a proposal for architectural services to secure a permit to convert the Property from a two flat building into a single family home.

47.     Mackie accepted the proposal for architectural services from Kennedy Architecture as the "owner" of the Property.

48.     Awtry ratified the agreement with Kennedy Architecture.

49.     Awtry signed the Agreement with Kennedy Architecture and paid Kennedy Architecture pursuant to the terms of such agreement, which is in Mackie's name as owner.

50.     Mackie and Awtry budgeted approximately $308,000.00 for the costs of re-development and interior design and decorating of the Property.

51.     Mackie and Awtry both lived at and had equal access to the Property during the construction.

52.     Mackie contributed her time, design and decorating skills to the re-development of the Property, including but not limited to, space planning, lighting design, millwork design, kitchen and bath design, furniture design, exterior design, backyard design.

53.     Originally, Best Build was hired by Awtry as the general contractor to provide project management services.

54.     In 2013, Awtry fired the general contractor and Mackie exclusively took over the project management aspect of the re-development. The firing of Best Build generated a net benefit of more than $30,000 because Awtry no longer was paying for Best Build's services.

55.     Mackie was not compensated for providing project management services.

56.     During the summer of 2014, upon information and belief, Awtry was admitted into a rehabilitation center for substance abuse problems, alcohol, and other issues.

57.     Mackie was thereafter left to single handedly manage the re-development of the Property in furtherance of carrying out the purpose of the Joint Venture.

58.     The re-development of the Property was completed in or about August 2014.

59.     In July 2015, Awtry sold the Property without Mackie's consent.

60.     Upon information and belief, Awtry sold the Property for more than $1,250,000.00.

61.     Upon information and belief, the profits from the Joint Venture exceeded $330,000.[1]

62.     Mackie made demands upon Awtry, to identify the costs and net profits and to pay Mackie one-half of the proceeds from the sale of the Property due Mackie pursuant to the terms of the Joint Venture.  Mackie also requested that Awtry pay Inspired Interiors for outstanding invoices and sales tax on other items to be reimbursed.

---

[1] This figure is dependent on the treatment of Inspired's invoices, services and sales tax that is owed by Awtry relating to the Property.

63.     Mackie further demanded that Awtry produce to her all of the books and records related to the Joint Venture so that an accounting of all amounts due to Mackie could be determined.

64.     Awtry has failed and refused to pay Mackie any portion of the profits from the re-development and sale of the Property or to provide Mackie with an accounting of the books and records related to the Joint Venture.

65.     Awtry's failure and refusal to pay or account to Mackie for her share of the proceeds from the sale of the Property is in breach of the Joint Venture agreement.

66.     Awtry's failure and refusal to include Mackie in the decision to sell the Property likely resulted in the Property being sold at a lower price.

67.     Awtry has further breached the Joint Venture by locking Mackie out of the Property and selling the Property without Mackie's consent.

68.     Mackie has performed all of her obligations under the Joint Venture agreement.

WHEREFORE, Plaintiff, Emily Mackie, asks this Court to enter an Order for judgment in favor of Mackie and against Awtry declaring that:

A.      Awtry and Mackie entered into a Joint Venture for the re-development and sale of the Property;

B.      Awtry breached the Joint Venture agreement by, among other things, failing to account to and pay Mackie her share of the proceeds of the sale of the Property;

C.      Awtry shall immediately account and turnover to Mackie a complete set of the books and records related to the Joint Venture;

D.      Judgment is entered in favor of Mackie and against Awtry in an amount in excess of $170,000.00, or such other amount that is due to Mackie from the sale of the Property to be determined at trial;

E.    Judgment in favor of Mackie and against Awtry for attorneys' fees and costs; and

F.    Mackie is entitled to such other and further relief this Court deems appropriate.

## COUNT III – BREACH OF FIDUCIARY DUTY
### (Mackie v. Awtry)

69.    Mackie restates and alleges Paragraphs 1 through 36 as though fully set forth herein.

70.    Awtry owed Mackie fiduciary duties of loyalty and care as a member of the Joint Venture agreement.

71.    Awtry's duty of loyalty included his duty to account and hold as trustee any property, profit or benefit derived by Awtry in the conduct and winding up of the Joint Venture, and to act fairly in dealing with the Joint Venture.

72.    Awtry's duty of care in the conduct of winding up the Joint Venture business includes refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law.

73.    Awtry also owed Mackie the duty of good faith and fair dealing.

74.    Awtry breached his fiduciary duties to Mackie by failing and refusing to pay Mackie her share of the net proceeds from the sale of the Property and refusing to account to Mackie.

75.    Awtry further breached his fiduciary duties to Mackie by:

    a.    Refusing to produce to Mackie the books and records related to the Joint Venture;

    b.    Taking action with respect to project that is not in the best interest of the joint venture and using joint venture assets to benefit himself personally;

    c.    Locking Mackie out of the Property by changing the alarm code to the Property and not providing it to Mackie;

    d.   Selling the Property without Mackie's consent; and

    e.   Failing to account and distribute profits;

76.    Awtry also has engaged in a scheme to harass Mackie, and has made numerous and continuing threats against Mackie.

77.    Furthermore, Awtry has engaged in conduct designed to impair Mackie's business. In particular, Awtry has made the following statements to Mackie:

    a.   Statement that Mackie was a whore;

    b.   Statement that Awtry will make the 'straight jacket tighter' (in reference to financial pressure);

    c.   Statement that "Get ready for Round #2 of legal battles"; and

    d.   Statement that Awtry will "destroy" Mackie.

78.    Upon information and belief, Awtry instructed a real estate agent (Beilin) to market the Property with Mackie's company's (Inspired) portfolio pictures and used without her knowledge or release.

79.    Awtry also used Mackie's accolades and award status to market the Property, without her consent.

80.    As a result of Awtry's breach of fiduciary duty, Mackie has been denied her share of the proceeds from the sale of the Property and suffered damages in excess of $170,000.00.

81.    Awtry's breach of his fiduciary duties was, at all times, undertaken knowingly, displaying utter indifference to Mackie's known rights.

82.    Awtry's actions were willful and wanton, characterized by oppression, and malice is the gist of the action. Awtry's actions justify the imposition of punitive damages.

WHEREFORE, Plaintiff, Emily Mackie, asks this Court to enter an Order declaring that:

A.    Defendant Mason Awtry owed a fiduciary duty to Mackie;

B.    Defendant Mason Awtry breached his fiduciary duties as a member of the Joint Venture;

C.    Awtry shall immediately account and turnover to Mackie a complete set of the books and records related to the Joint Venture;

D.    A constructive trust imposed on i) the funds resulting from the sale of the Property and ii) all other assets acquired during the Joint Venture relationship to avoid unjust enrichment by Awtry, until such time as this Court can determine the proper amount due to Mackie;

E.    Awtry advance payment for Mackie's attorneys' fees and costs related to this proceeding;

F.    Judgment is entered in favor of Mackie and against Awtry in an amount in excess of $170,000.00 and which shall be determined at trial;

G.    Compensatory and punitive damages are awarded to Mackie against Awtry in an amount to be determined at trial, but no less than $50,000;

H.    Judgment in favor of Mackie and against Awtry for attorneys' fees and costs; and

I.    Mackie shall be awarded such other and further relief this Court deems appropriate.

**COUNT IV**
**UNJUST ENRICHMENT**
**(in the alternative)**
**(Inspired and Mackie v. Awtry)**

83.    Mackie is the owner of and senior designer for Inspired, which is in the business of providing upscale residential interior design, large scale remodeling, kitchen and bathroom design, and interior decorating services.

84.     In 2011, Awtry purchased the property commonly known as 4225 N. Oakley Ave., Chicago, IL 60618 (the "Property") for approximately $550,000.00.

85.     Awtry purchased the Property for the purpose of converting the two flat residential building into a single family home.

86.     Mackie and Awtry lived at the Property together from approximately August 2011 to August 2014 (with some exception).

87.     While Mackie lived at the Property she provided project management and interior design services to Awtry in connection with the conversion and re-development of the Property, including, but not limited to:

     a.  Engaging the services of Kennedy Architecture for the purpose of obtaining a proposal for architectural services to convert the Property from a two flat to a single family home;

     b.  Coordinating with suppliers and contractors;

     c.  Being onsite during the rehabilitation work;

     d.  Facilitating communications between Awtry and the tradesmen;

     e.  Managing the interior design and decorating of the Property;

     f.  Designing the interior space;

     g.  Exclusively selecting paint colors and all finishes inside and outside the home;

     h.  Shopping for materials, products and furniture, and

     i.  Coordinating the delivery/installation of furniture, appliances and other materials and products.

88.     The value of Mackie's project management services provided in connection with the re-development of the Property exceeds $200,000.00.

89.     Mackie has not been reimbursed for the project management services she provided to Awtry.

90.     The time and superior design and decorating skills Mackie contributed to the Property enriched Awtry in that Mackie's services increased the value of the Property by more than $500,000.00, and made it more marketable for sale.

91.     Upon information and belief, Awtry sold the Property in July 2015 for more than $1,200,000.00.

92.     Mackie did not provide her services gratuitously.

93.     Awtry accepted the serviced provided by Mackie.

94.     Awtry knew Mackie's services would increase the value of the Property.

95.     Awtry acquiesced in Mackie providing the project management services, knowing that Mackie intended to be reimbursed for those services.

96.     Awtry's retention of the benefit of Mackie's project management services to Mackie's detriment is unjust, and violates the fundamental principles of justice equity and good conscience.

97.     Awtry instructed a real estate agent to market the Property with Mackie's company's (Inspired) portfolio pictures and used without her knowledge or release.

98.     Awtry also used Mackie's accolades and award status to market the Property, without her consent.

99.     Third parties have contacted Mackie repeatedly for information about the Property as a result of Awtry's unauthorized use of Mackie and Inspired's information.

100.    Mackie is entitled to damages to prevent Awtry's continued unjust enrichment.

Wherefore, Plaintiff Emily Mackie asks this Court to enter Order for judgment in favor of Mackie and against Awtry in an amount in excess of $200,000.00, awarding Mackie her

attorneys' fees and costs in connection with bringing this claim, and granting such other and further relief this Court deems appropriate.

## COUNT V
## BREACH OF CONTRACT
### (Inspired v. Awtry and Rolam)

101.   In 2011, Awtry purchased the property commonly known as 4225 N. Oakley Ave., Chicago, IL 60618 (the "Property") for approximately $550,000.00.

102.   Awtry purchased the Property for the purpose of converting the two flat residential building into a single family home.

103.   In or about September 2011, Awtry and Rolam entered into an oral contract with Inspired, pursuant to which Inspired would provide interior design and remodeling services in connection with Awtry's re-development of the Property.

104.   Awtry and Rolam agreed to pay Inspired for services performed by representatives of Inspired on an hourly basis.

105.   Awtry and Rolam further agreed to reimburse Inspired for any advanced costs for the purchase of materials, furniture and other products.  In fact, Rolam and Awtry reimbursed Inspired for some, but not all, services and costs.

106.   Between September 2011 and August 2014, Inspired provided interior design services in connection with the re-development of the Property, the total cost for which is in excess of $50,000.

107.   Between September 2011 and August 2014, Inspired advanced funds toward the redevelopment of the Property. The funds advanced by Inspired were used to purchase materials, furniture and other products used in the redevelopment of the Property. These costs include, but

are not limited to, more than $50,000.00 for labor and materials provided in connection with the landscaping and hardscaping of the backyard.

108.    Inspired further contributed repurposed materials, furniture and products to the redevelopment of the Property, which have a value of more than $50,000.

109.    In or about July 2014, Inspired made a demand upon Awtry (individually and as agent of Rolam) for the payment of services provided and reimbursement of costs advanced by Inspired in connection with the re-development of the Property.

110.    Despite said demand, Awtry and Rolam have failed and refused to pay any portion of the amounts due to Inspired.

111.    Awtry and Rolam's failure to pay the amounts due is a breach of the agreement reached between Awtry, Rolam and Inspired.

112.    Inspired has fully performed all of its obligations under the contract.

Wherefore, Plaintiff, Inspired Interiors, asks this Court to enter an Order for judgment in favor of Inspired and against Awtry and Rolam in an amount in excess of $50,000, awarding attorneys' fees and costs, and granting such other and further relief this Court deems appropriate.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Inspired v. Awtry and Rolam)**

113.    Mackie is the owner of and senior designer for Inspired.

114.    Inspired is in the business of providing upscale residential interior design, large scale remodeling, kitchen and bathroom design, and interior decorating services.

115.    In 2011, Awtry purchased the property commonly known as 4225 N. Oakley Ave., Chicago, IL 60618 (the "Property") for approximately $550,000.00.

116.    Awtry purchased the Property for the purpose of converting the two flat residential building into a single family home.

117.    Mackie and Awtry lived at the Property together from approximately August 2011 to August 2015.

118.    Between August 2011 and August 2014, Inspired provided many hours of interior design services in connection with the re-development of the Property, the total cost for which is in excess of $50,000.

119.    Between August 2011 and August 2014, Inspired advanced in excess of $50,000 toward Awtry's redevelopment of the Property. The funds advanced by Inspired were used to purchase materials, furniture and other products used in the redevelopment of the Property. These costs include, but are not limited to, more than $50,000.00 for labor and materials provided in connection with the landscaping and hardscaping of the backyard.

120.    Inspired further contributed repurposed materials, furniture and products to the redevelopment of the Property, which have a value of more than $50,000.

121.    Inspired's services, advancement of funds, and contribution of materials, furniture and other products increased the value of the Property and made the Property more marketable for sale.

122.    Upon information and belief, Awtry sold the Property in July 2015 for more than $1,200,000.  Upon information and belief, Rolam received funds from the sale of the Property.

123.    Inspired did not provide services, funds or materials, furniture or other products gratuitously.

124.    Awtry and Rolam accepted the products and services provided by Inspired.

125.    Awtry and Rolam knew Inspired's services and the products provided by Inspired would increase the value of the Property.

126.    Awtry and Rolam acquiesced in Inspired providing services and products knowing that Inspired intended to be reimbursed for those services and products.

127.    Awtry and Rolam's retention of the benefit of Inspired's design services, materials, furniture and other products to Inspired's detriment is unjust, and violates the fundamental principles of justice equity and good conscience.

128.    The principles of justice, equity and good conscience require that Awtry and Rolam not be allowed to retain the benefit of Inspired's contributions without paying for them.

129.    Awtry and Rolam used undue influence, fraud and duress to induce Inspired into providing products and services for the redevelopment of the Property.

130.    It is unjust to allow Awtry and Rolam to benefit from the product and services provided by Plaintiffs as the result of improper conduct by Awtry and Rolam.

131.    Inspired is entitled to damages to prevent Awtry and Rolam's continued unjust enrichment.

Wherefore, Plaintiff, Inspired Interiors, asks this Court to enter an Order for judgment in favor of Inspired and against Awtry and Rolam in an amount in excess of $50,000, awarding attorneys' fees and costs, and granting such other and further relief this Court deems appropriate.

## COUNT IX
## UNJUST ENRICHMENT/RESTITUTION
### (Mackie v. Awtry)

132.    In 2011, Awtry purchased the property commonly known as 4225 N. Oakley Ave., Chicago, IL 60618 (the "Property").

133.    Between August 2011 and August 2014 2015, Awtry and Mackie lived together at the Property, and with their minor child.

134. To best care for their child, Mackie and Awtry allocated their work and family responsibilities.

135. To that end, Awtry owned his own businesswa, Rightsize Facility Performance and ROLAM Equities, and paid for the vast majority of the living expenses for Mackie and their minor child.

136. In exchange, Mackie reduced the number of hours that she worked for her business, Inspired, and took on the responsibility of being the primary caregiver to their child, and attending to other domestic responsibilities.

137. During this time, the Property was being redeveloped for purposes of converting the Property from a two flat to a single family home. Mackie further cut back her hours at work in order to contribute her time and interior design knowledge and skill to the development of the Property.

138. As a result of the allocation of the parties' respective responsibilities in the family, Awtry's business, and, therefore, his companies grew exponentially. During this time, Awtry purchased additional real estate investments, and 333 Ohio Street, invested in Q9, acquired other small businesses that RFP absorbed.

139. In addition, as a result of Mackie's contribution of her time and interior design services, the value of the Property increased by more than $500,000.00.

140. Between August 2011 and August 2014, the couple intentionally comingled and shared their assets based on a mutual commitment and expectation of a lifelong relationship, they divided their domestic and work responsibilities to best provide for the child they had together (as well as the children each of them have with other people), and neither partner intended for their decisions and family roles to leave Mackie at a financial disadvantage later in life.

141.    In August 2014, Mackie terminated the relationship. Mackie and the minor child moved out of the Property.

142.    Due to the disproportionate time and attention that Awtry was able to give to building his businesses during the relationship, Awtry has not only valuable businesses, but also more income and savings than Mackie.

143.    Awtry knew the allocation of the domestic and child rearing responsibilities to Mackie would result in a reduced revenue stream for Mackie.

144.    Awtry acquiesced in Mackie reducing her obligations to her business because he knew he would receive a financial benefit as a result of the allocation of the domestic responsibilities to Mackie.

145.    Awtry's retention of the benefit as a result of the allocation of the domestic responsibilities to Mackie violates the fundamental principles of justice equity and good conscience.

146.    The principles of justice, equity and good conscience require that Awtry not be allowed to retain the benefit of the allocation of the domestic responsibilities to Mackie without compensating Mackie for her detriment.

WHEREFORE, Mackie respectfully requests the following relief:

A.    A constructive trust over the proceeds of the sale of the Property and allocation of that portion of the proceeds attributable to the time and materials Mackie contributed to improving the Property;

B.    An constructive trust over the annual net earnings of Awtry's businesses to prevent unjust enrichment;

C.      An award of compensation in the amount of $20,000 per month, representing the value of Mackie's lost income as a result of the allocation of the domestic responsibilities to Mackie;

D.      An order requiring Awtry to reimburse Mackie for all services, product and profit lost by contributing such product and services to the development of the Property;

E.      An order requiring Awtry to advance payment for Plaintiff's attorneys' fees and costs relating to this proceeding;

F.      An award of compensatory and punitive damages in an amount to be determined but no less than $50,000 in favor of Mackie and against Defendant Mason Awtry;

G.      An award of costs and attorneys' fees; and

H.      For any further relief this Court deems just.

**COUNT X**
**UNJUST ENRICHMENT BASED ON FRAUD**
**(Plaintiffs v. Awtry)**

147.    Plaintiffs restate and re-allege paragraphs 1 through 11, 37 through 41 as though fully restated herein.

148.    Plaintiffs contributed hundreds of hours of design and decorating services to the development of the Property.

149.    Plaintiffs contributed product to the development of the Property.

150.    Plaintiffs contributed funds to purchase product which was used in the development of the Property and to finish the exterior.

151.    Plaintiffs provided project management services to the Property.

152.    Awtry unjustly retained the benefit of the funds, product and services contributed to the Property by Plaintiffs, to the detriment of Plaintiffs.

153. The principles of justice, equity and good conscience require that Awtry not be allowed to retain the benefit of Plaintiffs' contributions without paying for them.

154. Awtry used undue influence, fraud and duress to induce Plaintiffs into providing product and services to the project.

155. The product and services provided to Awtry and the project were not gratuitous.

156. Awtry accepted the product and services provided by Plaintiffs.

157. It is unjust to allow Awtry to benefit from the product and services provided by Plaintiffs as the result of improper conduct by Awtry.

158. Awtry's retention of the benefit violates the fundamental principles of justice, equity and good conscience.

159. Plaintiffs are entitled to damages to prevent Awtry's continued unjust enrichment.

WHEREFORE, Plaintiffs Inspired Interiors, Inc. and Emily Mackie respectfully request the following relief:

A. An order finding that Awtry has benefitted from the product and services provided by Plaintiffs to the property;

B. An order finding that Awtry agreed to provide financial support to Mackie until their minor child reached the age of majority;

C. An order requiring Awtry to pay $20,000 per month to Mackie;

D. An order requiring Awtry to reimburse Inspired for all services, product and lost profit lost by contributing such product and services to the Oakley property;

E. An order requiring Awtry to advance payment for Plaintiff's attorneys' fees and costs relating to this proceeding;

F. An award of compensatory and punitive damages in an amount to be determined but no less than $50,000 in favor of Plaintiff and against Defendant Mason Awtry;

G.      An award of costs and attorneys' fees; and

H.      For any further relief this Court deems just.


                                        Respectfully submitted,

                                        **INSPIRED INTERIORS, INC. and
                                        EMILY MACKIE**
                                                **Plaintiffs**


                                        _____/s/ Megan M. Mathias_____
                                        By:   One of their attorneys

Megan Lopp Mathias
Melissa J. Lettiere
STAHL COWEN CROWLEY ADDIS LLC
55 W. Monroe St., Suite 1200
Chicago, Illinois  60603
312.377.7766
Fax: 312.423.8189
mmathias@stahlcowen.com